[Cite as *State v. Mercado*, 2026-Ohio-2082.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellant, :

                               No. 115612

    v. :

JULIO MERCADO, :

    Defendant-Appellee. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** June 4, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627349-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, and Arwa Elmashae, Legal Intern, *for appellant*.

Watson Kuhlman, LLC, and Myron P. Watson, for *appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Plaintiff-appellant the State of Ohio ("State") appeals the granting of defendant-appellee Julio Mercado's ("Mercado") motion to dismiss based on preindictment delay. Upon review, we reverse the trial court's decision since

Mercado failed to establish that the delay caused actual prejudice and remand the matter for further proceedings.

## I. Facts and Procedural History

{¶ 2} In March 2018, Mercado was indicted by a grand jury in a two-count indictment for offenses that allegedly occurred in August 2002. Count 1 charged Mercado with rape in violation of R.C. 2907.02(A)(2), and Count 2 charged him with kidnapping in violation of R.C. 2905.01(A)(4), both first-degree felonies. Count 2 also included a sexual-motivation specification. A summons was issued to Mercado's last known address in Florida; however, service failed and was returned "bad address." A warrant for Mercado's arrest was also issued. Mercado was not apprehended until February 2025.

{¶ 3} Mercado pleaded not guilty and filed a motion to dismiss the indictment. Therein, Mercado claimed that he cooperated with law enforcement in 2002, believed the matter was resolved, and was unaware of his indictment nearly 16 years later. Mercado asserted that the State failed to act in a timely manner and never attempted to notify him of the indictment despite his consistent availability and cooperation. According to Mercado, the extraordinary and unjustified delay caused "profound prejudice" since "[k]ey witnesses ha[d] died, memories ha[d] faded, and exculpatory evidence ha[d] been lost." Specifically, Mercado argued that the deaths of his former landlord ("Landlord") and former neighbor ("Neighbor") "critically weakened his ability to mount an effective defense" since they "had firsthand knowledge of the circumstances surrounding the alleged incident" and

"could have directly countered the prosecution's narrative." Mercado claimed that Landlord and Neighbor could have offered testimony about (1) the alleged victim's voluntary arrival at Mercado's residence, (2) the absence of any indication of distress, disorder, or criminal activity, and (3) the apartment's "calm and non-confrontational" environment at the time. Mercado concluded that the loss of these firsthand accounts violated his constitutional right to a fair trial and "[d]ue process forb[ade] the State from pursing a prosecution under these circumstances." Mercado did not attach any exhibits to his motion.

{¶ 4} The State opposed the motion, countering that Mercado could not show actual prejudice. According to the State, the alleged victim's voluntary arrival at Mercado's residence was not a fact in dispute; rather, the alleged victim told police and a sexual assault nurse examiner that she went to Mercado's home voluntarily and the State anticipated that she would testify to that fact at trial. Nor did the alleged victim claim that the incident involved screaming, banging, a violent brawl, or raucous conduct that could potentially disturb neighbors or the area's otherwise peaceful environment. The State further countered that Landlord and Neighbor did not have relevant knowledge and Mercado was "merely speculating" about what they may or may not have seen or heard since neither were in his home to observe whether the sexual conduct was consensual or nonconsensual. The State concluded that Mercado's "vague assertions" failed to support his claim that the encounter was consensual or refute the charges against him.

{¶ 5} In response, Mercado filed a brief in support of his motion. Therein Mercado argued that his burden to show actual prejudice was met and the State failed to offer any justifiable reason for the 23-year delay.

{¶ 6} A hearing was held on Mercado's motion to dismiss the indictment. At the hearing, defense counsel argued, in relevant part, that the inexcusable delay in Mercado's prosecution caused profound and irreversible prejudice since "two witnesses who supported the fact that this was a consensual sexual encounter are now passed on." Defense counsel explained that Neighbor visited Mercado's apartment during the timeframe the alleged victim was inside and "there was [an] exchange of words in which the accuser was present." Defense counsel further explained that Landlord saw Mercado and the alleged victim entering and exiting Mercado's apartment. The defense believed Landlord would have offered testimony about the alleged victim's frequent and voluntary visits to Mercado's residence and the absence of any disturbance or erratic behavior. Defense counsel argued that Landlord's and Neighbor's testimony — which was now "no longer in existence" due to their deaths — went "directly to the strength of [Mercado's] defense."

{¶ 7} The State countered that Mercado had not shown actual prejudice since it was anticipated that the alleged victim would testify that she visited Mercado's home voluntarily and "this wasn't some violent brawl or things were thrown around and other people could hear." The State further countered that Landlord and Neighbor did not witness the incident and, therefore, could not present strong enough evidence to warrant dismissal for preindictment delay. Finally, the State

argued that defense had not provided any actual evidence — via testimony or affidavit — to establish what Landlord and Neighbor would have testified to and that Landlord and Neighbor were deceased.

{¶ 8} The defense countered that "the police reports indicate themselves exactly what our position was and I think the Court can take judicial notice unless the State is absolutely denying the statements that were made by my client during the interrogation . . . ." The trial court explained that it only had Mercado's motion, the State's brief in opposition, and any exhibits attached thereto and could not "at this time take judicial notice because I don't have them and I've never seen them." Defense counsel responded that he would like Mercado to offer his own testimony, and the trial court allowed him to do so.

{¶ 9} Mercado testified that he lived in Cleveland in 2002, left in 2010, and resided in Florida up until his arrest. Mercado stated that he did not hide his whereabouts and only learned of the outstanding warrant a couple of weeks prior to his apprehension. According to Mercado, he was questioned by police back in 2002 after he was accused of raping the alleged victim in his apartment. Mercado provided a statement and explained the circumstances of their encounter. Mercado stated, "After everything was said and done, [the detective] had t[a]ken a DNA test and we went to the phone company to get some phone records, and after we left the phone company I asked her what's gonna happen afterwards and she told me if I didn't hear from her in two weeks that everything was done." Mercado never heard from the detective and was never contacted by any other law enforcement officer.

{¶ 10} Mercado testified that during the time the alleged victim was in his apartment, Neighbor was standing by his own apartment door talking to Landlord. Neighbor also came to Mercado's apartment to bring him some clothes while the victim was present. Mercado stated that he did not have any conversations with Neighbor after he was accused of raping the alleged victim, and Neighbor died in 2019 from the coronavirus.

{¶ 11} Mercado further testified that Landlord was standing at an apartment door and saying hello while he and the alleged victim walked to his apartment. Mercado stated that everyone waved, and Landlord saw them walking. Mercado was confident that Landlord would have testified had she been alive. Mercado learned from a friend that Landlord had passed away after he moved out of the apartment complex, although he did not remember the year.

{¶ 12} On cross-examination, Mercado explained that he lived in a house with two apartment units; Neighbor lived in the front of the house, and he lived in the back. Mercado and Neighbor worked together, although he could not recall the company's name. Mercado learned of Neighbor's passing from a Facebook post published by the Neighbor's wife. Mercado further explained that Landlord lived next door. Mercado was not sure when Landlord died and believed it may have been two or three years after the incident occurred. Mercado learned of Landlord's passing because "it just circulated through the neighborhood." Mercado did not have any death certificates or funeral notices for Neighbor or Landlord.

{¶ 13} During his cross-examination, Mercado testified that the alleged victim came to his house voluntarily after attending a baseball game with three other people earlier in the evening — one of whom was also a neighbor. According to Mercado, he and the alleged victim retrieved a VCR from his apartment to take to the other neighbor's apartment so the group could watch movies. Landlord saw Mercado and the alleged victim walking to his apartment. Mercado acknowledged that "nothing sexual" happened when Landlord saw them.

{¶ 14} When Mercado and the alleged victim returned to Mercado's apartment after watching movies at the other neighbor's house, Neighbor unexpectedly knocked on his door while the two were kissing and hugging. The alleged victim was lying on the bed in his studio apartment at the time. Mercado told police in 2002 that he opened the door, took the clothes Neighbor was delivering, and told Neighbor he would see him at work. Neighbor left, and Mercado and the alleged victim "started kissing and fooling around." Mercado further testified that Landlord and Neighbor were also outside having a conversation at some point following the alleged victim's return to his apartment.

{¶ 15} Mercado acknowledged on cross-examination that his interaction with Neighbor was "brief" and "pretty short." Mercado was not sure whether Neighbor and the alleged victim communicated with each other. Mercado conceded that neither Landlord nor Neighbor were inside of his apartment when sexual activity occurred. Nor did Landlord or Neighbor see any sexual activity that transpired between him and the alleged victim. Mercado further acknowledged that

no yelling, screaming, banging, or fighting occurred and the sexual activity was "rather quiet."

{¶ 16} Ultimately, the trial court granted Mercado's motion and dismissed the case without making any factual findings or explaining its legal conclusions. The State appealed, raising a single assignment of error for this court's review.

**Assignment of Error**

The trial court erred in granting the motion to dismiss on the grounds of preindictment delay.

## II.  Law and Analysis

{¶ 17} In its sole assignment of error, the State claims that the trial court erred in granting Mercado's motion to dismiss for preindictment delay since he did not establish that the delay caused actual prejudice and the delay was justified. The State also asks this court "to restore a preference for trial courts to decide preindictment-delay motions after trial."

{¶ 18} When evaluating a decision on a motion to dismiss for preindictment delay, we apply a de novo standard of review to legal issues but afford great deference to the findings of fact made by the trial court. *State v. Walker*, 2018-Ohio-3669, ¶ 15 (8th Dist.), citing *State v. Hunter*, 2017-Ohio-4180, ¶ 16 (8th Dist.). Since the trial court did not make any factual findings in this case, we must independently determine whether the facts satisfy the applicable legal standard.

{¶ 19} While a crime's statute of limitations is a defendant's primary protection against overly stale criminal charges, due-process rights provide

additional protection in cases where the preindictment-delay causes actual prejudice to the defendant and is unjustifiable. *State v. Wardlaw*, 2025-Ohio-2221, ¶ 57-58, citing *State v. Wade*, 2008-Ohio-4574, ¶ 45 (8th Dist.), and *State v. Jones*, 2024-Ohio-1588, ¶ 41 (8th Dist.). To analyze due-process claims based on preindictment-delay, the Ohio Supreme Court has firmly established the following burden-shifting framework: "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *State v. Jones*, 2016-Ohio-5105, ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217 (1998), and *State v. Adams*, 2015-Ohio-3954, ¶ 99. Thus, the defendant bears the initial burden of presenting evidence to establish actual prejudice and the court is not required to consider the reasons for delay if the defendant fails meet that "nearly insurmountable" threshold. *Walker* at ¶ 17, citing *Jones*, 2016-Ohio-5105, at ¶ 13, and *Adams* at ¶ 107; *Wardlaw* at ¶ 59, quoting *State v. Bourn*, 2022-Ohio-4321, ¶ 18.

{¶ 20} "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, *would* minimize or eliminate the impact of the state's evidence and bolster the defense." (Emphasis added.) *Jones*, 2016-Ohio-5105, at ¶ 28. Speculative claims or vague assertions of prejudice are insufficient; rather, the due-process requirement of actual prejudice may be satisfied only when it is proven that the "'unavailability of specific evidence or testimony . . . would attack the credibility or weight of the state's evidence against a defendant and thereby aid in establishing a defense.'" *Jones*, 2024-Ohio-1588, at

¶ 44, quoting *Jones*, 2016-Ohio-5105, at ¶ 25. Moreover, "[i]t is not enough for a defendant to show that the missing evidence or unavailable testimony 'could' or 'may' help the defendant." *Wardlaw* at ¶ 60 (noting the significance of the Ohio Supreme Court's use of the word "would" in *Jones*, 2016-Ohio-5105). Instead, "'"[a] defendant must show, by concrete proof, the exculpatory value of any alleged missing evidence."'" *Id.* at ¶ 60, quoting *Wade* at ¶ 48, quoting *State v. Robinson*, 2008-Ohio-3498, ¶ 121 (6th Dist.).

{¶ 21} Evidence that a witness is deceased is sufficient to establish the witness's unavailability, however, the witness's death alone is insufficient to establish actual prejudice. *Walker*, 2018-Ohio-3669, at ¶ 22 (8th Dist.), citing *Jones,* 2016-Ohio-5105, at ¶ 26. "'The death of a potential witness during the preindictment period can constitute prejudice . . . if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means.'" *Jones*, 2024-Ohio-1588, at ¶ 58, quoting *Adams* at ¶ 103. While a defendant "need not identify 'what the exact substance of an unavailable witness's testimony would have been,'" to establish actual prejudice there must be (1) "some indication in the record of what testimony the unavailable witness might have offered" and (2) "'a viable, tangible connection' between the missing testimony from the unavailable witness and the defense of the case." *Id.* at ¶ 59, quoting *Jones,* 2016-Ohio-5105, at ¶ 28, and *State. v Herns*, 2024-Ohio-1099, ¶ 49 (7th Dist.).

{¶ 22} On appeal, the State argues that the trial court erred in granting Mercado's motion and dismissing the case for preindictment delay since Mercado failed to establish actual prejudice. The State claims that Mercado's claims rely on "pure speculation" and "conjecture" and rest "entirely on assumptions" about Landlord's and Neighbor's potential testimony. The State asserts that even if Landlord and Neighbor testified as Mercado believes they would, they could offer only "cursory," "peripheral," and "background" observations that were irrelevant to his defense of consent. The State emphasizes that Mercado never provided proof of Landlord's and Neighbor's deaths or presented any evidence that they possessed exculpatory knowledge about the sexual encounter. Finally, the State asserts that "[n]othing in the record shows [Landlord and Neighbor] would contradict the [alleged] victim's account," and the purported unavailable testimony is not disputed and could be offered by other sources, including the alleged victim.

{¶ 23} Mercado counters that he established actual prejudice: he identified Landlord and Neighbor; testified about the specific observations they made on the night in question; established that both witnesses are deceased and, therefore, unavailable; and demonstrated that their testimony would have bolstered his defense and minimized the impact of the State's evidence. Mercado asserts that Neighbor was present at his apartment door during the timeframe of the alleged offense and Landlord was present at the building and observed the alleged victim's arrival. Mercado argues that Neighbor's observations were contemporaneous with the events at issue and Landlord was "uniquely positioned to observe activity at her

property." Mercado claims that Landlord and Neighbor "*could* have testified that the [alleged victim] appeared comfortable and willing when she arrived; that she showed no signs of distress; that the apartment was quiet with no sounds of struggle, screaming, or disturbance; and that Mr. Mercado was known as peaceful, non-violent person." (Emphasis added.)

{¶ 24} A defendant raised similar arguments in *State v. Robinson*, 2019-Ohio-4458 (8th Dist.). There, Robinson challenged his convictions for rape and kidnapping by arguing that the trial court erred in denying his motion to dismiss for preindictment delay. *Id.* at ¶ 1. Robinson claimed that he suffered actual prejudice since he could not locate certain witnesses, including individuals who may have been present inside of his home when the incident occurred. *Id.* at ¶ 33. This court described Robinson's arguments as follows: "Robinson maintains that their testimony '*could* have supported [his] claim that he did not rape this woman.' Robinson suggests that if [the victim] had yelled for Robinsons to stop as she alleged, the missing witnesses 'would have heard it.'" (Emphasis in original.) *Id.* at ¶ 37. We determined that Robinson's claims were "speculative in nature" and explained, "Because Robinson is merely speculating as to what these missing witnesses may or may not have heard, whether the witnesses would have assisted the defense or aided the prosecution is entirely unknown." *Id.* Ultimately, we concluded that Robinson failed to show that preindictment delay caused him actual prejudice since he "ha[d] not demonstrated that testimony from these missing witnesses would have attacked

the credibility or weight of the state's evidence against [him] and thereby aided his defense."

{¶ 25} In this case, we find Mercado's arguments to be even more speculative and unpersuasive. Mercado's claims primarily rely on defense counsel's theoretical assertions about what Landlord and Neighbor "could" say to bolster the evidence offered in support of his motion to dismiss. Indeed, Mercado did not attach any exhibits to the motion or present any evidence at the hearing beyond his own limited testimony.

{¶ 26} Our review of his testimony reveals that Mercado believed that Landlord and Neighbor were both deceased, although he was uncertain about when their deaths occurred. Mercado testified that (1) Landlord observed him and the alleged victim walking to his apartment; (2) Neighbor came to his front door while the alleged victim was on the bed located inside his studio apartment, he opened the door, and he and Neighbor had a brief interaction; and (3) Landlord and Neighbor were talking outside while the alleged victim was inside of his apartment. Mercado acknowledged that Landlord and Neighbor were not present in his apartment and did not observe any sexual conduct between him and the alleged victim.

{¶ 27} Mercado also conceded that he did not speak to Neighbor after he was accused of rape and he was unsure whether Neighbor spoke to the alleged victim. Mercado did not offer any testimony about relevant interactions he may or may not have had with the Landlord about her observations. While Mercado mentioned that he told investigators about Landlord and Neighbor, Mercado offered no evidence

indicating whether they were contacted or interviewed. Therefore, the record is devoid of any evidence — in the form of testimony, records, affidavits, witness statements, etc. — establishing what Landlord and Neighbor actually saw, heard, believed, or remembered and what their now-unavailable testimony offered the defense.

{¶ 28} Moreover, Mercado testified that he and the alleged victim attended a baseball game and watched movies with three other individuals on the night in question. As noted by the State, these individuals would have also observed Mercado interactions with the alleged victim before the incident. Mercado further testified that the alleged victim voluntarily entered his apartment, their sexual encounter was quiet, and they did not create any disturbances. The State maintains that these facts are not in dispute and anticipates that the victim will offer the same or similar testimony. Therefore, the evidence Mercado claims to be unavailable is cumulative and/or obtainable from other sources.

{¶ 29} This court has held, "Although the lack of specificity of a missing witness's testimony does not render the claim of prejudice fatally speculative, it does [when the defendant] fails to show that [the missing] testimony would minimize or eliminate the impact of the state's evidence or bolster [the defendant's] defense." *State v. McKinley*, 2020-Ohio-3664, ¶ 42 (8th Dist.). Based on the record before us, we cannot say that Mercado established that Landlord's or Neighbor's testimony would do so. Rather, there is nothing in the record beyond mere speculation that Landlord and Neighbor witnessed anything that would have undermined the State's

case or aided Mercado's defense. "'The law requires a defendant to do more than offer mere speculation as to how he was prejudiced by any delay.'" *State v. Knox*, 2019-Ohio-1246, ¶ 39 (8th Dist.), quoting *State v. Owens*, 2015-Ohio-3881, ¶ 5 (8th Dist.). Therefore, Mercado did not satisfy his initial burden by presenting evidence to establish actual prejudice and the trial court erred in granting his motion to dismiss for preindictment delay.

{¶ 30} Having determined that Mercado failed to prove actual prejudice, it is unnecessary to determine whether there were justifiable reasons for the delay or contemplate whether preindictment-delay motions should be considered only after verdicts are rendered.

{¶ 31} Accordingly, the State's first assignment of error is sustained.

{¶ 32} Judgment reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR